June Term,
1861.

RUSSELL
v.
LAWTON.

## RUSSELL VS. LAWTON.

On the *ninth* of February a sheriff received an execution and levied it upon gold coin belonging to the defendant in the execution, and paid it over to the execution plaintiff in good faith and without any notice of the fact that an execution in favor of another party against the goods of the same defendant, had been delivered for service to one of his deputies on the *fourth* of the same month. The execution which was delivered to the deputy having been returned "no property," the plaintiff in that execution sued the sheriff for misconduct in having collected said money and applied it upon the junior execution, while the senior one remained in the hands of his deputy unsatisfied. *Held*, that the action could not be maintained.

The rule that the sheriff and his deputies are regarded as one officer, is not to be extended so as to make him chargeable in such a case with a notice of all that has come to the knowledge of any of his deputies.

Whether the sheriff would have been liable, if, at the time he paid over the money to the plaintiff in the second execution, he had had actual knowledge of the prior execution in the hands of his deputy, the court is not called upon to decide.

Our statute declares that personal property shall be bound from the time it is seized on execution. Sec. 18, chap. 134, R. S. Whether under this statute an execution is a lien until actual seizure, *quære*. If not, then had an application been made while the money remained in the hands of the sheriff, to have it applied on the first execution, the court would not have so applied it.

APPEAL from the Circuit Court for *Rock* County.

The facts are stated in the opinion of the court. The complaint, after stating the delivery of the plaintiff's execu-

tion to the sheriff's deputy on the 4th of February, and the delivery of an execution to the sheriff in favor of the Beloit Bank against the same defendant, on the 9th of the same month, and that the sheriff, on the last named day, levied upon certain gold and silver coin as the property of the execution defendant, and applied it upon the junior execution, and that the plaintiff's execution had been returned "no property," proceeded as follows: "So this plaintiff avers that the said defendant has collected the sum of $1,110 18, while his deputy held the execution of this plaintiff unsatisfied, and has applied the money so collected, wrongfully and in violation of his duty as sheriff, to the injury of the plaintiff to the amount of his said execution; wherefore he demands judgment," &c.   Judgment for the plaintiff.

*Mat. H. Carpenter*, for appellant:

Where a sheriff has acted in good faith, the court will protect him, if possible.   *Gerrish vs. Edson*, 1 N. H., 86; *Bissell vs. Huntington*, 2 id., 147; *Timbrell vs. Mills*, 1 W. Bl., 206. Where the execution is a lien on goods of the debtor from the time of its *delivery* to the officer, he is bound to apply to a senior execution in his hand, money made by his sale of goods under a junior execution, and while the money is in the hands of the sheriff, the creditors have a right to it, in the order of priority as determined by the delivery of the executions to the sheriff.   This right of the creditors to the fund itself is enforced by the courts so long as the sheriff holds the money.   *Lambert vs. Paulding*, 18 Johns., 311; *Bonaffee vs. Fisk*, 13 S. & M., 682; *Rankin vs. Scott*, 12 Wheat., 177.   But even where the execution is a lien from its delivery to the sheriff, and where it is therefore consistent for the courts to enforce the lien upon the fund while it remains in his hands, it is conceded that a sale of property under a junior execution is good, and *if the sheriff pays over the money on the junior execution* it cannot be recovered back. *Marsh vs. Lawrence*, 4 Cow., 461; 1 Ld. Raymond, 252; 4 East, 523; 12 Johns., 163, 403; *Smallcomb vs. Buckingham*, Comyn's Rep., 35.   In the last case it was held also that a sheriff should be excused if there was *no default in him*; as if he who took out the first writ concealed it in his hands, the

sheriff might rightly make execution on another writ which bears the last *teste*, but came first to his hands. If the execution in this case bound the goods from its delivery to the sheriff, the action could not, therefore, be maintained. The money having been levied on and paid over on the junior execution, it could not be recovered back, and the fact that the sheriff did this without notice of the prior execution, shows that the *sheriff was not in default*, and brings the case within the doctrine of *Small-comb vs. Buckingham, supra.* In Kentucky an execution is a lien from its delivery to the sheriff, and for that reason *Million vs. Com.*, 1 B. Mon., 310, and *Ferguson vs. Williams*, 3 id., 302, are no authority against us in this case. In each of those cases, also, it appeared that the deputy who paid over money on the junior execution, had knowlege of the prior execution, and in this case it is expressly found that the sheriff did not know of the first execution. But our statute, in providing " that personal property shall be bound from the time it is seized in execution," abolishes the whole doctrine of liens of executions on personal property ; for after the seizure the property is held by virtue of the levy. Besides an execution did not, at common law, bind money, and could not be levied on money (Watson's Sheriff, chap. 10, sec. 12 ; 9 East, 48; 4 id., 510; Rep. temp. Hardwicke, 53; 7 Eng. Com. Law, 443); and the only authority of the sheriff in this case to levy on coin was derived from our statute, R. S., ch. 134, sec. 19. It is therefore the *levy* which first fixes the lien, and the junior execution creditor would be entitled to be first paid if his execution was first levied, and the only remedy of the senior creditor would be against the sheriff for negligence in not levying under the execution first received. But the case finds that when he paid over the money, he knew nothing of the other execution in the hands of his deputy, and he is therefore not chargeable with negligence in not making the levy under that execution, unless he is affected with constructive notice on the ground that he and his deputies are one. On this point counsel cited *Runlett vs. Bell*, 5 N. H., 433 ; *Howard vs. Whittemore*, 9 id., 133 ; *Vinton vs. Bradford*, 13 Mass., 114 ; *Thompson vs. Marsh*, 14 id., 269 ;

*Bagley vs. White,* 4 Pick., 395 ; *Denny vs. Warren,* 16 Mass., 420 ; *Gordon vs. Jenney,* 16 id., 469 ; *Odiorne vs. Colley,* 2 N. H., 69 ; *Kittredge vs. Bellows,* 7 N. H., 399 ; *Huntington vs. Blaisdell,* 2 N. H., 317 ; *Moore vs. Graves,* 3 id., 408.

*J. H. Knowlton,* and *Rockwell & Converse,* for respondents :

There is but one officer known to the law as sheriff. His deputies are his agents. He appoints them and is responsible for their acts. R. S., chap. 13, sec. 100. A sheriff is liable to be attached for the default of his deputy in not returning process, and that even after twelve years. *People vs. Brown,* 6 Cow., 41 ; *Brockway vs. Wilber,* 5 Johns., 356 ; *Mc Intyre vs. Trumbull,* 7 id., 35. 2. At common law, the execution bound goods from its *teste ;* by statute 29 Car. 2, from its delivery to the sheriff ; and by our statute the goods are bound only from the time they are seized in execution ; but neither the English statute nor ours changes the duty of the sheriff to obtain satisfaction *first* of the execution first delivered to him. To hold otherwise is to allow the sheriff to select which execution out of a number in his hands he will levy first, and thus bind the goods in favor of his friend to the prejudice of his enemy. But the law requires of the sheriff scrupulous impartiality between those who are compelled to have his official services, and this impartiality cannot be *enforced* unless he is compelled at his peril to obtain satisfaction of a senior before he does of a junior execution. And such was the intent of the legislature when they declared (chap. 134, sec. 15, R. S.) that upon receiving any execution the sheriff should indorse on it the "year, month, day and *hour* of the day when he received it." If there is no prior right from the delivery of the writ, the section quoted is a senseless provision. See *Hotchkiss vs. Mc Vickar,* 12 Johns., 406 ; *Sandford vs. Roosa,* id., 163 ; *Marsh vs. Lawrence,* 4 Cow., 461 ; *Paine vs. Drew,* 4 East, 538 ; 1 Ld. Raymond, 251. A levy when made upon any execution, where several are held by the sheriff against the same party, enures as a levy on the first received, and the plaintiff therein is entitled to the avails, even though the property be sold on the junior execution. 18 Johns., 311 ; 1 Cow., 592. 3. The neglect of the deputy is the neglect of the sheriff, although

the sheriff has no personal knowledge of it. It is reasonable to require the sheriff and his deputies to inform each other of the writs in their hands respectively, and the sheriff is presumed or bound to know what writs are in the hands of his deputies. The sheriff might require such information from his deputies, and if he does not, how can he escape liability, if he makes the money on a junior execution and returns the senior unsatisfied?

November 2. *By the Court*, COLE, J. It is very clear that this action is one sounding in tort, and that it cannot be maintained unless the appellant, or his deputy Wright, was guilty of some neglect of duty for which the law holds the sheriff liable. Do the facts show this to be the case? Those facts are few and undisputed, and are in substance as follows:

On the 9th day of February, 1859, the appellant, as sheriff of Rock county, had delivered to him an execution in favor of the Bank of Beloit against the Racine & Mississippi Railroad company, and by direction of the judgment creditors, levied the same upon eleven hundred and ten dollars coin, the money of the railroad company, and paid it over as money made upon the execution. On the preceding 4th day of February, an execution in favor of the respondent and against the same defendants was delivered to Sydney Wright, a deputy of the appellant, which was returned unsatisfied for the reason that the officer could find no property upon which to levy. The respondent has brought this action to recover the amount of the execution delivered to Wright, insisting that because it was placed in the hands of the deputy before the junior execution was delivered to the sheriff, it should first be satisfied, and that the sheriff was guilty of misconduct in not thus applying the money that came to his hands, instead of paying it over to the bank. At the same time it is conceded that the sheriff acted in perfect good faith in the matter, *and that when he levied upon and paid over the money to the bank, he had no notice whatever that his deputy held any execution against the same debtor.* In view of these facts, upon what principle is it sought to charge the appellant in this action? It is this. A delivery of an ex-

June Term,
1861

RUSSELL
V.
LAWTON.

ecution to a deputy sheriff is said in legal effect to be a delivery to the sheriff himself, since, in contemplation of law, all the deputies of the sheriff are but one officer, being all servants of the same master, and that therefore the sheriff must be held chargeable with constructive notice of the prior execution in the hands of his deputy. And upon this fiction of the law the whole case hinges.

It is undoubtedly true that for many purposes a sheriff and his deputies are regarded as one officer, in the sense that an official act of the deputy is deemed the act of the sheriff, and the sheriff is held responsible for such act as his own, though he may have had no personal knowledge of the matter, and been individually guilty of no wrong. All processes are directed to the sheriff as such, who is required to do the thing therein commanded to be done; and the sheriff is responsible to the world for all breaches of duty or official misconduct on the part of any of his deputies. For this reason an action for a breach of duty of the office of sheriff must be brought against the high sheriff, though the breach was by the default of the under sheriff. *Cameron vs. Reynolds*, 1 Cowper, 403. In this sense the sheriff and his deputies may be said to constitute one officer. But still the deputies of a sheriff, in relation to each other, must often be considered as several officers, with distinct rights and acting with distinct liabilities. *Odiorne vs. Colley*, 2 N. H., 66; *Vinton vs. Bradford*, 13 Mass., 114; *Thompson vs. Marsh*, 14 id., 269; *Bagley vs. White*, 4 Pick., 395. The maxim, then, that a sheriff and his deputies constitute but one person, has received qualification in various cases which have come before the courts. Philosophically speaking, of course, the maxim has no truth or foundation whatever. The legal identity of the sheriff and his deputies is maintained for the plain and obvious purpose to render the sheriff, in a civil action, liable for the official acts of his deputies as if they were his own acts. But to say that whatever comes to the possession of one or all the deputies comes to the possession of the sheriff, and that he is chargeable with notice of all which comes to the knowledge of any and all his deputies, is a proposition of law which, we think, cannot be maintained. And the

June Term,
1861.

RUSSELL
v.
LAWTON.

fallacy of the proposition cannot, perhaps, better be illustrated than by applying it to the circumstances and facts of this case. It is not pretended that the deputy, Wright, was guilty of any neglect of duty in not seizing under his execution the coin belonging to the railroad company. If he could have found this coin, he was expressly authorized by our statute to levy upon it and pay it over as so much money collected upon the execution. Section 19, chap. 134, R. S., 1858. But it does not appear that by the exercise of any degree of diligence he could have found the coin. So the deputy has not been guilty of any default or misconduct, and if this action is maintained, it is very obvious the sheriff can have no action over against his deputy.

But to bring to a closer test the proposition that a sheriff and all his deputies must be considered as one person, and that the sheriff must be chargeable with notice of all matters which come to the possession or knowledge of such deputies, take a case suggested on the argument, and which will occur to any one reflecting on the subject. An execution against A is put into the hands of a deputy who knows of no property belonging to A to satisfy the same. Another deputy has information of property possessed by A sufficient to satisfy the execution, but has no knowledge that an execution is out against him. The sheriff has no knowledge of any execution against A, or of any property belonging to him. Under these circumstances, is the sheriff to be charged with constructive notice of the execution in the hands of one deputy, and of the information possessed by the other in respect to property belonging to the debtor, and thus held liable for a breach of duty in not making the money on the execution which he never saw? To contend for such a proposition would seem little else than the most glaring absurdity; and yet we see no escape from such a result, if the maxim that the sheriff and his deputies are to be regarded as one person, is to be accepted without limitation. The only ground for saying that the sheriff is liable in this action, is that when he paid the money which he had collected on the junior execution, over to the bank, he must be chargeable with notice of the senior execution in the hands

of his deputy. It is admitted that he acted in the matter with entire good faith, and did not know that Wright held or had any execution against the railroad company in favor of the respondent. We think, under these circumstances, to hold him liable "is to carry beyond the reason of the principle and into flagrant absurdities, the maxim that the sheriff and his deputies constitute but one person." Whether the liability of the sheriff would have been changed, had he collected and paid over the coin to the bank with actual knowledge of the prior execution in the hands of the deputy, we are not called upon to decide. At common law, it is well settled, the execution had relation to its *teste*, and bound the goods and chattels of the debtor from that date. This rule was changed by the statute of frauds, which declared that the execution should bind the property only from the time it was delivered to the sheriff to be executed. *Smallcomb vs. Buckingham*, 1 Comyn's R., 35 ; *Payne· vs. Drew*, 4 East, 523 ; *Hotchkiss vs. McVickar*, 12 Johns. R. 403 ; *Lambert vs. Paulding*, 18 id., 311; *Marsh vs. Lawrence*, 4 Cow., 461.

Probably in Kentucky the sheriff would be held to be in default for paying over money on a junior execution, knowing that a prior one was in the hands of his deputy. *Million vs. Commonwealth*, 1 B. Mon., 310; *Ferguson vs. Williams*, 3 id., 302. And when the money produced on the second execution happened to remain in the hands of the sheriff when an application was made to the court for a rule directing to whom it should be paid, it has been ordered to be paid to the plaintiff in the first execution. *Lambert vs. Paulding, supra.* In New York, however, the execution is a lien upon the property of the judgment debtor from its delivery to the sheriff (*Marsh vs. Lawrence, supra*), while our statute declares that "*personal property shall be bound from the time it is seized on execution.*" Sec. 18, chap. 134. Whether this statute does not materially change the law upon this subject, and postpone the lien upon the property until it is actually seized on the execution, may admit of grave doubt, If that be the effect of the statute, then even if the money had remained in the hands of the sheriff, when an applica-

tion was made to apply it on the execution in favor of the respondent, the court would not so have applied it.

It follows from these views, that the judgment of the circuit court must be reversed, and a new trial ordered.