ERNEST ALBRECHT and others *vs.* SETH W. LONG and others.

## July 2, 1878.

Sheriff and Deputy.—The sheriff and his deputies are, in law, one officer, so that a writ delivered for execution to the deputy is, in law, delivered to the sheriff.

Same—Priority of Execution Liens.—It is the duty of the sheriff to execute writs of execution against the same debtor, in the order in which they come into his hands. But the liens of the respective creditors upon property not subject to the lien of the judgment take precedence according to the order in which the executions are actually levied upon it, and not in the order in which they are delivered to the sheriff.

Appeal by plaintiffs from an order of the district court for Waseca county, *Lord, J.*, presiding, refusing a new trial, after a verdict for the defendants directed by the court, on the facts admitted at the trial. To the statement in the opinion it may be added that the property levied on was a stock of general merchandise at Waseca, at which place both the sheriff and his deputy resided, the latter living about quarter of a mile and the former about half a mile from the stock of goods, and three quarters of a mile from each other.

*Lewis Brownell*, for appellants.

A deputy sheriff is not a mere servant or agent of the sheriff, but a public officer, having a separate and distinct official existence. Notice to the sheriff is not notice to the deputy. It is true that in a general sense, and for certain purposes, possession by the deputy is possession by the sheriff, of property levied on, and the acts of the deputy are the acts of the sheriff, so far as that property levied on by the deputy is, in contemplation of law, in the custody of the sheriff, so as to hold it for the benefit of the execution creditor against any one claiming it.

In New York and Kentucky it is provided by statute the execution first delivered to an officer to be executed shall have a preference, notwithstanding a levy be first made under another execution; and this disposes of the cases cited from those states by the defendants.

Our statute makes the deputy a public officer. It provides for the appointment of deputies by the sheriff, and that "each deputy shall, before entering on his official duties, take the oath required by law, which oath and appointment shall be filed and recorded in the registry of deeds of the proper county." Gen. St. *c.* 8, § 178. The preceding section provides that no sheriff or deputy sheriff shall practice as an attorney nor "be eligible to any other civil office." As such public officer he may not recover a reward which he would otherwise be entitled to. *Warner* v. *Grace*, 14 Minn. 487.

If the statute left the matter doubtful, the following cases

hold that the deputy is a public officer, having a separate official existence, and holding his office for the public convenience and the public good. *Whitney* v. *Butterfield,* 13 Cal. 335; *Vinton* v. *Bradford,* 13 Mass. 114; *Thompson* v. *Marsh,* 14 Mass. 269; *Bagley* v. *White,* 4 Pick. 395; *Field* v. *Milburn,* 9 Mo. 492; *Stacy* v. *Farnham,* 2 How. Pr. 26; *Cumming* v. *Brown,* 43 N. Y. 514; *Flanagan* v. *Hoyt,* 36 Vt. 565; *West River Bank* v. *Gorham,* 38 Vt. 649; *Russell* v. *Lawton,* 14 Wis. 202; *Knox* v. *Webster,* 18 Wis. 406. The old English doctrine that a deputy is a mere servant of the sheriff is not accepted in this country. *Draper* v. *Arnold,* 12 Mass 450; *Campbell* v. *Phelps,* 17 Mass. 244.

The deputy being a public officer, it follows that when he made the first levy under plaintiffs' execution, the plaintiffs acquired the first lien and were entitled to the first money. At common law, the execution bearing the earliest *teste* must be first paid, because a lien from the date of the *teste.* By statute in New York and some other states, the execution first delivered to an officer must be first paid, because a lien from the date of such delivery, except as against *bona-fide* purchasers between such delivery and an actual levy. The clause protecting *bona-fide* purchasers was inserted for their protection alone. But under our statute, (Gen. St. c. 66, § 269,) the lien dates from actual levy. The first levy is a first lien for the benefit of the creditor in the execution levied, and not for the benefit of all execution creditors; and the sheriff is the mere instrument of the law, to procure for the creditor satisfaction of the debt. *Hathaway* v. *Howell,* 54 N. Y. 109; *Tullis* v. *Brawley,* 3 Minn. 191 (277.) It is an absolute lien for the creditor's benefit, and as clearly entitles him to the first money as if he had a first judgment lien on real estate. Judgment and execution liens are wholly the creatures of statute, and while the statutes of some states provide that the execution first delivered shall be first paid, our statute provides that "until a levy, property not subject to the lien of the judgment is not affected by the execution." Gen.

St. *c.* 66, § 269.   Hence, the plaintiff having the first levy, is to be preferred to a creditor by whose execution the property was not affected when plaintiff's execution became a lien by levy.

The fact that the sheriff and his deputy are separate officers need create no embarrassment.   Each is to use ordinary diligence, and then neither is liable.   In this case the sheriff used ordinary diligence, but the deputy, living nearer the goods than the sheriff, made his levy first, without fault of the sheriff or of anybody, for the sheriff was not bound to get up in the night to execute the three writs delivered to him at or about midnight.   The case is the same as it would be if plaintiffs' levy had been made by a constable, under an execution on a justice's court judgment.

*B. S. Lewis,* for respondent.   Gen. St. *c.* 8, § 178, provides that "every sheriff shall appoint . . . deputy sheriffs, for whose acts he shall be responsible, and whom he may remove at pleasure."   The deputy is the agent of the sheriff, appointed by him, under his full control, removable by him and responsible to him alone.   He gives no bond to the state, or to any public body.   It is true that the deputy fills an official position, and is, in a limited sense, a public officer, but his official position is not a distinct and separate office, and his only official acts are those which he performs in discharging the duties of the sheriff's office as his subordinate.   There is but one office of sheriff in a county, and that is filled by a single sheriff, to whom all process is directed, and who alone is responsible for its execution.   Process is not directed to the deputies, but they may execute it in the name of the sheriff, and for him, and by virtue of his office, and he alone is responsible for its rightful execution, and an action will not lie against the deputy for wrongful execution of it.

The servant is not greater than his master.   One portion of an office cannot outstrip another.   The sheriff is not required to use diligence in getting ahead of himself, nor to see that one of his deputies (living, perhaps, as in this case, a

quarter of a mile nearer the property,) does not outstrip him, and thus render him liable to the creditor whose execution he holds, or to the creditor whose execution the deputy holds. The sheriff is liable for the proper disposition and application of the debtor's property. He has no remedy against the deputy, for the deputy has done no more than his duty in using diligence in making the levy. The same diligence which the deputy used, if exercised by the sheriff, would have secured a first levy by him, and for not using it, he would be liable to the creditors whose executions he held; so that, if plaintiff's position is correct, by reason of the act of the deputy, who was without fault, the sheriff is liable, no matter how he applies the proceeds. If he pays to either creditor he is liable to the other. The law never intended that the sheriff should be so placed that any payment he might make would be both right and wrong—that he should be liable to pay the same money to two different creditors.

This view of the relation of the sheriff and his deputies is supported by *Easly* v. *Dye,* 14 Ala. 158; *Joyce* v. *Joyce,* 5 Cal. 449; *Rowley* v. *Howard,* 23 Cal. 401; *Million* v. *Commonwealth,* 1 B. Mon. 310; *Watson* v. *Todd,* 5 Mass. 271; *Tillotson* v. *Cheatham,* 2 John. 62; *Tuttle* v. *Love,* 7 John. 470; *Russell* v. *Gibbs,* 5 Cow. 390; *Armstrong* v. *Garrow,* 6 Cow. 465; *Paddock* v. *Cameron,* 8 Cow. 212; *Colvin* v. *Holbrook,* 2 N. Y. 126; *Sheldon* v. *Payne,* 7 N. Y. 453.

The Massachusetts cases cited by plaintiff are based on the peculiar statute of the state, by which deputies are required to give bonds to the state; and so in some of the other states.

It follows from the relation between the sheriff and his deputy that the plaintiffs' execution must be regarded as being in the hands of the sheriff, who had three others in his hands which were first delivered, and as if the sheriff had himself first levied such junior execution.

2. Such being the case, the sheriff was justified in distributing the proceeds of the debtors' property in payment of the

executions, in the order in which they were thus received by him.

At common law, an execution was a lien on the personal property of the debtor from its date. This rule was changed by statute 29 Charles II. *c.* 3, so as to make the execution a lien from the date of delivery to the sheriff, and such is the statutory rule in many of the states. The common-law rule was found to work injustice to *bona-fide* purchasers from the debtor after the date of the execution, and it was only for the purpose of preventing this injustice that the statute 29 Charles II. was passed. *Payne* v. *Drewe,* 4 East, 523; *Rogers* v. *Dickey,* 6 Ill. 636; *Tabb* v. *Harris,* 4 Bibb, (Ky.) 29; *Hotchkiss* v. *McVickar,* 12 John. 403; *Marsh* v. *Lawrence,* 4 Cow. 461. But even as thus modified, the common-law rule was found to work injustice to purchasers in good faith between the delivery of the execution to the sheriff and an actual levy, and to obviate this evil entirely, the statute of this state was adopted. By the decisions above cited, it is well established what particular evil of the common law was intended to be remedied by the statute 29 Charles II., and as the evil still existed, though in a less degree, it is fair reasoning that our statute was intended to complete the cure of the evil of the common-law rule which the English statute had remedied but partially. And such has been the construction of the statute by this court, and such has been the construction, in California, of a statute almost an exact transcript of our own. *Tullis* v. *Brawley,* 3 Minn. 191 (277;) *Blood* v. *Light,* 38 Cal. 649.

As the object of Gen. St. *c.* 66, § 269, was merely to cure the evil of the common law, and the statute 29 Charles II., and not to create a lien in favor of a particular creditor as against another, where the executions of each are in the hands of the same officer, it follows that the case here presented is not affected by the statute, but must be governed by the common-law rule that where several executions come to the hands of the sheriff, in favor of different creditors, but against the

same debtor, he must satisfy and pay the executions in the order of their receipt by him. *Rust* v. *Pritchett*, 5 Harrington, 260; *Parkerson* v. *Sessions*, 40 Ga. 171; *Rogers* v. *Dickey*, 6 Ill. 636; *Moore* v. *Fritz*, 15 Ind. 43; *Million* v. *Commonwealth*, 1 B. Mon. 310; *Kenon* v. *Ficklin*, 6 B. Mon. 415; *Lambert* v. *Paulding*, 18 John. 311; *Russell* v. *Gibbs*, 5 Cow. 390; *Champenois* v. *White*, 1 Wend. 92; *Peck* v. *Tiffany*, 2 N. Y. 451; *Shafner* v. *Gilmore*, 3 Watts & Serg. 438; *Knox* v. *Webster*, 18 Wis. 406; Herman on Executions, § 271. It is true that this duty of the sheriff is prescribed by statute in some states, but such statutes are merely in affirmance of the common-law rule.

From the cases cited it appears that when the sheriff has several executions in his hands against the same debtor, the possession of the sheriff under a levy does not enure to the benefit of the creditor whose execution is levied, as against a prior execution. The effect of the levy is to put the property into the custody of the law, that the sheriff may do with it as the law directs; and it matters not under which of the executions he levies, or under which he sells: the execution first delivered to him must be first paid, for between such execution creditors, there is no priority of lien by reason of a levy; and Gen. St. *c.* 70, § 10, seems to be a statutory recognition of the same rule.

In *Knox* v. *Webster*, 18 Wis. 406, and *Russell* v. *Lawton*, 14 Wis. 202, it was sought to charge the sheriff for not doing what the sheriff did in this case. In the former case he escaped liability, because it was held he could not be charged with constructive knowledge of an execution in his deputy's hands. The court expressly decline to decide what would be the rule if, as in this case, the sheriff had actual knowledge. In the latter case, the sheriff was held liable for not doing what the sheriff did here, and the case is in point only as showing the duty of the sheriff to pay executions in the order of their receipt by him. The Wisconsin statute (Rev. St. *c.* 134, § 18,) differs from ours as to the effect of a levy.

GILFILLAN, C. J. The defendant Long was sheriff of the County of Waseca, and Stevenson was his deputy; executions issued against the property of Sherwins were delivered as follows: One in favor of Charles Shedd, to the sheriff himself, at 10:30 o'clock P. M. of March 19, 1877; one in favor of Chancy Hardin *et al.*, and another in favor of J. S. Ricker *et al.*, to the sheriff in person, at 2 o'clock A. M. of March 20; and one in favor of these plaintiffs, to the deputy, at 6 o'clock A. M. of the same day. The deputy levied this last execution at half-past six A. M. of the same day, and took possession of the property. About half an hour thereafter, the sheriff levied the three executions delivered to him in person, upon the same property, and, upon his request, the deputy delivered to him the plaintiffs' execution, and the possession of the property. The sheriff advertised the property for sale under several executions, not naming either of them, and sold the property, and applied the proceeds, after deducting his fees, to the payment in full of the Shedd execution, and the remainder upon the execution of Hardin *et al.*, and returned the plaintiffs' wholly unsatisfied, whereupon plaintiffs bring suit against the sheriff and the sureties in his official bond.

The question presented is, whether the levy of an execution gives the execution creditor a lien upon the property, which entitles him to priority over other executions in the hands of the same officer against the same debtor, delivered to the officer before, but not levied till after, his? For these executions are all to be taken as delivered to the sheriff. The deputy is not an officer having a separate official existence from that of the sheriff. He is an officer of the sheriff's, whose powers and duties, so far as they affect the public, it is true, are defined by law. But he holds the office at the pleasure of the sheriff, is appointed and removable by him, and civilly responsible to him, and not to the parties whose writs come into his hands. He must act in the name of the sheriff, and not in his own name. All his acts are, in law, the acts of the sheriff; and the responsibility, civilly, for such acts done

within his authority, is that of the sheriff. Our statutes do not, as do the statutes of some of the states, alter in any way the *status* of the deputy.

It is the duty of the sheriff, upon a writ coming into his hands, to use due diligence in the execution of it. It attaches to the writs as they come into his hands, and it follows that it is his duty to execute first those which are first delivered to him. Upon several executions in favor of different creditors against the same debtor, it is his duty to the creditor in that first delivered, to execute that first; and to the creditor in the second, to execute that second; and so through them all. This is the duty he owes to the several creditors. But the rights of the creditors, as against each other, are not necessarily controlled by it.

At the common law, an execution bound the goods of the debtor from the time of the *teste*, even though they were subsequently transferred to a *bona-fide* purchaser. The statute 29 Charles II., *c.* 3, § 16, provided that the execution "shall bind the property of the goods against which such writ of execution is sued out, but from the time that such writ shall be delivered to the sheriff, under-sheriff or coroner, to be executed." Under the common-law rule, the execution operated as a lien in favor of the creditor for the satisfaction of his debt, from the time of the *teste*, and, under the statute, it operated as such lien from the time of its delivery to be executed. And the latter would continue to be the rule, were it not for the provisions of the statute of this state. Gen. St. *c.* 66, § 269, enacts that "until a levy, property not subject to the lien of the judgment is not affected by the execution." So that the creditor acquires a lien on the property, by virtue of his execution, only from the levy. The property is not affected by the *teste*, nor the delivery to the sheriff. The levy fixes the rights of the creditor as to the specific property. It is argued that the statute 29 Charles II., and the General Statutes were passed only for the protection of *bona-fide* purchasers, and therefore do not affect the rights of

execution creditors as against each other. If this were so, their rights would be controlled by the common-law rule, that the execution binds the goods from its *teste*, and the execution last delivered and levied might take precedence of all the others, because of the priority in its *teste*. We do not think the statute was intended to operate only as between the execution creditor and a *bona-fide* purchaser, as claimed, but it was intended to define absolutely, as its language indicates, the rights of the creditor as to the specific property, and as between him and all others.

The execution first levied, then, has the first lien on the property, though there may be others in the hands of the sheriff, which were delivered to him before the one levied. *Russell* v. *Lawton*, 14 Wis. 202; *Knox* v. *Webster*, 18 Wis. 406. The creditors in executions afterwards levied cannot claim to be paid out of the property, until the one first levied is satisfied. This would be so in a contest between the creditors, and it must be so in a dispute between the creditor having the first lien by levy, and the sheriff. The remedy of the creditor in the execution first delivered is against the sheriff. If the latter, through negligence, omit to levy the first execution till a second has been levied, and loss thereby accrues to the first execution creditor, an action will undoubtedly lie.

It does not follow, however, from the rule of law that a sheriff and his deputies are regarded as one officer, that where several executions against the same debtor are placed, some in the hands of the sheriff in person, and others in the hands of his deputy, and in consequence thereof, and without actual negligence of the sheriff or deputy holding the execution first delivered, a subsequent execution is first levied, that the sheriff is liable to the creditor in the first execution. When it comes to a question of diligence, the law recognizes the fact that the sheriff and his deputy are different persons, though in theory one officer. And as it does not require impossibilities, it regards the question of diligence in view of

that fact, and of what may naturally happen in consequence of it. *Russell* v. *Lawton,* 14 Wis. 202; *Whitney* v. *Butterfield,* 13 Cal. 335.

Order reversed, and new trial ordered.