## Ohlson vs. Pierce, Sheriff, etc.

*April 13 — May 10, 1882.*

**Sheriff.** *(1, 2) His duty as to prior levy of senior execution. (3) Conclusiveness of his return.*

1. A sheriff, having in his hands two executions in favor of different creditors against property of the same debtor, and having in his power property known by him to belong to such debtor, and subject to levy, is absolutely bound to levy upon it so as to make the senior execution a lien prior to that of the junior one, unless the senior execution creditor has interfered with the discharge of the officer's duty in that behalf by some positive act indicating a waiver of his prior right, or a direction or consent on his part that his execution lie dormant or be postponed to the other. Ordinary diligence, honest motives, etc., are no defense to the officer in such a case.

2. In an action against the officer by the senior execution creditor in such a case, the answer alleged that at the time when the junior execution was levied plaintiff well knew of the execution defendant's interest in the property so levied upon, but did not inform the officer thereof, nor request him to levy thereon, and that it "was supposed and believed" by the officer and by the plaintiff that a levy of plaintiff's execution, previously made on other property, "would be amply sufficient to satisfy plaintiff's judgment." *Held* (on objection to evidence), no defense.

3. The return of the sheriff to an execution is conclusive against him as to what property was levied upon.

APPEAL from the Circuit Court for *Manitowoc* County.

The plaintiff's cause of action in this case is thus stated by Mr. Justice ORTON:

"It appears that on the 16th day of January, 1879, the plaintiff obtained a judgment against Louis Oberland and Nicholas Thompson in the sum of $1,257.50, and that on the same day execution was issued thereon and delivered to the defendant, as sheriff, and that he levied upon a certain store building, with the entire stock of merchandise therein, as the property of said judgment defendants, subject to three other executions then in his hands, amounting in all to the sum of $3,284.65, and that on this levy there was only obtained for the plaintiff the sum of $461, and his execution was returned unsatisfied, and that no other property of the execution defendants could be found. It further appears that at that time one of the defendants in the execution owned one-fourth interest in the schooner Felicitous, then lying in the Manitowoc river, and that on the 17th day of January, 1879, one Charles Luling obtained three judgments against the same defendants in the sum of $124.61 each, and executions were issued thereon and placed in the hands of the present defendant, as sheriff, and that he on the same day levied the same upon said schooner, from which levy the said Luling obtained the sum of $250. This action is brought against the defendant, as such sheriff, to recover the damages suffered by reason of his neglect or violation of duty in not making the levy upon the schooner subject to plaintiff's execution, or in not giving that execution priority as a lien upon the same."

The answer herein alleges, by way of defense, that immediately upon the receipt by defendant of plaintiff's execution aforesaid, he (defendant) levied upon a store building and a stock of merchandise of the estimated value of $8,000, and of the actual appraised value of about $7,000, besides accounts amounting to about $3,500; that at the time of the making of

said levy, the plaintiff well knew that his judgment debtor Thompson owned a share in the vessel levied upon, but did not inform defendant thereof, nor request him to levy thereon; "that it was supposed and believed by this defendant and by said plaintiff that the levy on said stock of merchandise would be amply sufficient to satisfy plaintiff's said judgment;" that immediately upon the receipt by defendant of the three executions in favor of Luling, said Luling, by his attorneys, "informed defendant of the said schooner's being in said county, and that said Thompson owned an interest in her, took this defendant to the vessel, pointed her out to him, and requested him to levy on Thompson's interest therein;" that defendant immediately levied upon said property by virtue of Luling's executions, and sold it under the same, on the 28th of February following, after duly advertising said sale; that during all the time that defendant was advertising such sale, the plaintiff himself and his attorneys well knew that defendant had made such levy under the Luling executions, and was intending to sell by virtue thereof, but neither plaintiff nor his attorneys ever protested against such sale, or requested that the money realized thereon be retained for plaintiff's use, or requested that any levy be made upon said property under plaintiff's execution; that defendant did not know that Thompson owned any interest in said vessel until informed of the fact by Luling or his attorneys; that defendant acted in good faith in the whole matter, and supposed he was doing his duty as required by law; and that plaintiff never made any claim against him on account of his failure to levy on the said property under plaintiff's execution, until a long time after the proceeds of the execution sale in Luling's favor had been paid to said Luling, nor until a long time after plaintiff's execution had been returned unsatisfied in part, nor until plaintiff and his attorneys had discovered their error of judgment in supposing that his execution was

fully secured by the levy upon said store building and stock of merchandise.

At the trial, plaintiff's objection to the admission of any evidence under the answer was overruled. After the evidence was all in, plaintiff asked the court to direct a judgment in his favor for the net amount of the proceeds of the sale made by defendant under the Luling executions, but the request was denied. Upon questions submitted by the court for special verdict, the jury found, in substance, 1. That when the Luling executions were put in defendant's hands, he held executions against the property of Oberland and Thompson amounting in all to $6,671.79. 2. That the value of the store building, stock of goods, safe, notes and other property of Oberland and Thompson levied upon by defendant under said executions before the Luling executions came to his hands, was $7,665. 3, 4. That the plaintiff's attorneys, when they delivered to defendant plaintiff's execution against Oberland and Thompson, directed him to levy upon the store building, stock of goods, safe, notes and accounts of said debtors, subject to the levy thereupon made by defendant by virtue of senior executions in his hands, and gave him no other spec fic directions. 5. That the value of Oberland and Thompson's accounts, when defendant received the Luling executions, was $3,500. 6. That when plaintiff's execution was delivered to defendant, plaintiff's attorneys stated to defendant, or led him to understand, that he could levy upon said accounts, so that he could make the value thereof upon the executions in his hands. 7. That plaintiff and his attorneys had full knowledge that defendant had levied upon the interest of Oberland and Thompson in the schooner Felicitous under the Luling executions, of the notice of sale thereof given under such executions, and that Luling claimed the money to be realized on such sale, before the sale was made. 8. That prior to such sale defendant

was not notified that plaintiff objected thereto or claimed that the money should be applied on his own execution. 9. That plaintiff "was satisfied and content with the levy as made by defendant under his execution, and believed that an adequate and sufficient amount of property had been seized thereunder to satisfy his execution." 10. That at the time when defendant levied upon the property of Oberland and Thompson by virtue of plaintiff's execution, he estimated and determined that he had seized and taken property in value subject to seizure and sale adequate to pay all the executions in his hands, including the plaintiff's, together with interest, etc. 11. That in making such estimate and determination the defendant exercised "ordinary and reasonable care and prudence, as well as a sound discretion and good judgment." 12. That defendant, before he sold the schooner and paid the proceeds to Luling, did not know or have any reason to believe that the property seized under the other executions would not be sufficient to pay those executions. 13. That property of Oberland and Thompson worth $575 was taken from defendant after his levy under plaintiff's execution, for their exemption and for taxes on the property so seized. 14. That from the time of the delivery to defendant of plaintiff's execution until the time of its return, Oberland and Thompson, or either of them, had no property in said county other than that seized under said execution, except said schooner. The other findings need not be stated here.

The fifth, sixth, seventh, ninth, tenth, eleventh and twelfth questions were submitted against plaintiff's objection.

Each party moved for judgment in his favor on the special verdict; and, judgment having been rendered thereon in defendant's favor, the plaintiff appealed.

The cause was submitted on the brief of *H. G. & W. J. Turner* for the appellant, and that of *Nash & Schmitz* for the respondent.

ORTON, J.   It is quite apparent that this cause was tried throughout upon a wrong theory, and the first grave error was in not sustaining the objection of the appellant to any evidence under the answer, on the ground that it stated no defense to the action.   This is not a case of mere negligence in not making a levy or in making an insufficient one, where only reasonable diligence under the circumstances would be required, but a case of the violation of a positive duty enjoined by law to levy executions in the order of time in which they come into the hands of the officer, upon all the property of the judgment debtor.   For not doing so in this case there can be but one legal excuse, and that is the interference with the discharge of this duty by the appellant, which caused his execution to lie *dormant* or to be deferred to the junior execution.

If, without this excuse or justification, the respondent, as sheriff, omitted to levy the execution of the appellant upon the schooner in which one of the judgment defendants owned a one-fourth interest, or omitted to levy the junior execution subject to that of the appellant, he acted at his own risk and is liable to the appellant.   Ordinary diligence, honest motives, or mistaken judgment will be no defense in such a case; for, if it could be, the positive requirements of the law in this respect would be of little avail in preventing partiality and injustice, and a clear legal right might be defeated by a great variety of excuses.   The answer sets up " that at the time of making said levy the plaintiff well knew of the interest in said vessel being owned by said Thompson, but did not inform the defendant thereof, nor request the defendant to levy thereon, and that it was supposed and believed by this defendant and by said plaintiff that the levy on the stock of merchandise would be amply sufficient to satisfy plaintiff's judgment."   It is not alleged, and it was not proved, that the appellant did or said anything, or that he did not remain entirely passive throughout

until the commencement of this suit.   The answer seems to be based upon the appellant's negligence in not directing a levy upon the vessel and in his not forbidding its sale on the junior execution; and it asserts only conditions of the appellant's mind, that he *supposed* and *believed* the first levy sufficient, without alleging that he ever informed the respondent that he so supposed or believed.   It is doubtful whether such an opinion expressed by the appellant would have excused or justified the sheriff in disregarding the requirements of the law in this respect, but this even was not alleged or proved.

The glaring fault of the defense is apparent in the ninth finding of fact by the jury, "that the plaintiff was *satisfied* and *content* with the levy as made by the defendant under his execution, and *believed* that an adequate and sufficient amount of property had been seized thereunder to satisfy his execution."   There was not a particle of evidence to sustain this finding, of anything the appellant had ever said or done, and this finding is an inference only from what he did not say or do, and besides, it is outside of any issue made by the answer, for it is not alleged that the plaintiff was "satisfied and content with the levy," but only that he supposed and believed it was sufficient.   In the sequel it appears that the levy was quite insufficient, and that the amount and value of the property levied upon, subject to prior claims upon it, was vastly over-estimated, at least by the respondent, and whether honestly so or not is quite immaterial to this case.   *In re Mowry*, 12 Wis., 53; Herman on Ex., 242.   Much is said in the evidence, in the charge of the court, and in the findings, as to the supposed value of the accounts and notes belonging to the defendants in the execution at the time, when in law they were not subject to seizure on execution, and according to the return made upon the execution by the respondent, as sheriff, they were not in fact levied upon, and his return is conclusive on that question.   *Sheldon v. Payne*, 7 N. Y.,

453; *Eastman v. Bennett*, 6 Wis., 232.   This serves to show the danger of departing from the strict rule of the liability of a sheriff in not following the direction of the law in levying executions in their order of time, and in allowing evidence of ordinary diligence in excuse of this violated legal duty.   For the respondent sets up that the appellant directed him to levy on these accounts and notes, and that their value was estimated in determining the sufficiency of the levy, as evidence of due diligence and honest mistake.

The statute requires that, " upon the receipt of any execution, the sheriff or other officer shall indorse thereon the year, month, day, and hour of the day, when he received the same."   Section 2972, R. S.   The only possible object of this statute is, that the officer shall proceed to levy executions in the precise order of time in which they are so received and indorsed, and to confer upon an execution plaintiff a priority of right to such levy, and therefore a prior lien upon the property of the execution defendant; for by another statute his personal property is not bound until seized under execution.   Section 2985, R. S.   Even the exact hour of the day when the execution is received must be indorsed, so that the diligent plaintiff may have the benefit not only of the priority of right given by the statute, but of the equitable right secured by the maxims, *qui prior est tempore, potior est jure*, and *vigilantibus et non dormientibus jura subserviunt*.   As to the general duty of a sheriff upon the receipt of an execution, the language of Mr. Justice Lyon in *Elmore v. Hill*, 46 Wis., 618, approved by the present chief justice in the same case, 51 Wis., 365, is pertinent to this case: " The result of the adjudications on the subject seems to be, that, on receipt of the execution, in the absence of *specific instructions*, the officer must proceed with reasonable celerity to seize the property of the debtor, if he knows, or by reasonable care can ascertain, that such debtor has property in his bailiwick liable to seizure upon execu-

tion." The duty of levying executions in the order of time in which they are received, is recognized in *Russell v. Lawton*, 14 Wis., 202; and such duty, in view of the statute, is clearly defined by Chief Justice Dixon in *Knox v. Webster*, 18 Wis., 406. That case is especially in point, not only in maintaining the strict liability of the sheriff for not complying with the law in this respect, but in the facts; for in that case, as in this, the plaintiff in the prior execution knew of the existence of the property liable to execution, and the sheriff did not until it was turned out by the plaintiff in the junior execution.

The language of the chief justice in that case is so appropriate in this, that an extended quotation from the opinion is warranted: "As to the duty of the sheriff in making the levy, we are satisfied he should have levied the senior execution first. The decision in *Russell v. Lawton* proceeded on this supposition in all cases where the several executions are in the hands of the same officer. The statute, sec. 15, [ch. 134, R. S. 1858], requires the sheriff under the sanction of his official oath, to indorse upon every execution the year, month, day, and hour of the day, when he received the same. No reason is perceived for this unless it be to furnish unequivocal and satisfactory evidence upon which to determine disputed questions of priority and preference among different execution creditors of the same debtor, and to enable the sheriff to guard against mistakes. He is a public officer of whom the law requires the strictest impartiality between those who are obliged to have his services, and this impartiality cannot be enforced except upon the rule that he must at his peril levy and satisfy executions according to their seniority in his hands. Once allow it to be a race of diligence between the different creditors in finding and pointing out the property of the debtor, and what a door to partiality, fraud and strife would be opened! The sheriff might neglect inquiry, or be wilfully ignorant, for the sake of favoring one or oppressing

another creditor, and the whole controversy would be thrown upon the uncertain testimony of interested and suspicious witnesses. We do not doubt, therefore, that it was the intention of the legislature, as it is the course of reason, that executions should be levied according to seniority, and that the sheriff in this case was not justified in levying the junior execution first because the creditor in that execution had been more successful than himself in finding the property of the execution debtor."

The prior receipt by the sheriff of an execution gives to the execution plaintiff a prior right of levy; but of course such right may be waived or relinquished by any unequivocal act or conduct on the part of the plaintiff, indicating such an intent; but such act or conduct must be of such a character as would waive or relinquish any other legal right. It is inconceivable how this can be done without some interference by the plaintiff with the duty of the sheriff — some direction, authority or consent that his execution lie dormant, and that a junior execution shall have preference and priority of levy; or, as is said in Herman on Executions, 268, " there must in this case be an interference with the execution of the writ by the plaintiff in order to make it dormant." As in the case of *Kellogg v. Griffin*, 17 Johns., 274, where the plaintiff directed the sheriff to make a levy, and then to do nothing more without his order, it was held a fraud as against junior judgment creditors, and the preference was lost. But where the plaintiff remains passive, and neither says nor does anything to interfere with the conduct of the officer, no matter how long he may have silently acquiesced in the delay or misconduct of the officer, his execution will not be declared dormant, and he will not lose his preference, as in *Herkimer Co. Bank v. Brown*, 6 Hill, 232. Nor will an execution become dormant by mere indulgence or negligence, as in *Russell v. Gibbs*, 5 Cow., 390. Nor by delay, unless the delay is caused by the interference or direction of the plaint-

iff, as in *Benjamin v. Smith*, 12 Wend., 404. Nor does the receipt of the money by the plaintiff, made by the sheriff on his first levy, waive his right to hold the sheriff liable for not also seizing the property upon which the junior execution was levied. *Holmes v. Clifton*, 10 Ad. & Ell., 673. Nor is the plaintiff bound to turn out property to the sheriff in order to save it from the levy of a junior execution. *Albany City Bank v. Dorr*, Walker (Mich.), 317.

There are many other cases of similar import cited to the text of Herman on Executions, 268; and several are cited in the brief of the learned counsel of the appellant, to which we need not specially refer. We have not had occasion to examine beyond the brief of the learned counsel of the appellant, for it is especially able and complete on all the questions presented by the record. We have not referred to the brief of the learned counsel of the respondent, although able, and evincing ingenuity and research, because the authorities cited are applicable only to cases of the negligence of the officer in not levying or in making an insufficient levy upon the property of the judgment defendant, and strictly applicable to the wrong theory upon which the cause was tried at the circuit.

In conclusion, it is proper to say that when the respondent ascertained that one of the defendants owned an interest in the schooner Felicitous subject to levy, the law made his duty plain to levy the execution of the appellant upon it, or to levy the junior execution, if at all, subject to that of the appellant already in his hands, unless he had the authority, direction or consent of the appellant that he need not do so, or unless the appellant in some unequivocal manner had waived his prior right. The insufficiency of the answer in the respects already indicated was not supplied by any proofs, so that the answer could stand amended in those respects; and an objection having been made to any evidence under the answer on account of its insufficiency to state a

defense, the various exceptions in the course of the trial, and to the instructions of the court to the jury and to the findings of the jury, need not be noticed, holding, as we do, that such objection to any evidence under the answer should have been sustained.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.